UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

WAYNE LAMAR MCKINNIES,

          Petitioner,

v.                             Case No. 3:22-cv-542-MMH-PDB

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
AND FLORIDA ATTORNEY GENERAL,

          Respondents.

_____

## ORDER

### I. Status

Petitioner Wayne Lamar McKinnies, an inmate of the Florida penal system, initiated this action on May 11, 2022,[1] by filing a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 (Petition; Doc. 1).[2] In the Petition, McKinnies challenges two 2020 state court (Duval County, Florida) judgments of conviction for burglary of a dwelling and possession of cannabis. He raises three grounds for relief. See Petition at 5–9. Respondents submitted a memorandum in opposition to the Petition. See Response to Petition for Writ of Habeas Corpus (Response; Doc. 5). They also submitted exhibits. See Docs.

_____

[1] See Houston v. Lack, 487 U.S. 266, 276 (1988) (mailbox rule).

[2] For purposes of reference to pleadings and exhibits, the Court will cite the document page numbers assigned by the Court's electronic docketing system.

5-1 through 5-9. McKinnies filed a brief in reply. <u>See</u> Petitioner's Reply to Respondent Response to Petition for Writ of Habeas Corpus (Reply; Doc. 10). This action is ripe for review.

## II. Relevant Procedural History

On December 11, 2019, the State of Florida filed a second amended information in <u>McKinnies v. State</u>, No. 2019-CF-2860 (Fla. 4th Cir. Ct.), charging McKinnies with burglary of a dwelling (Count One) and possession of less than twenty grams of cannabis (Count Two). Doc. 5-2 at 38. On December 12, 2019, a jury found McKinnies guilty of both charges. <u>Id.</u> at 64–65. On February 5, 2020, the trial court sentenced him to a ten-year term of imprisonment on Count One and a concurrent term of 329 days on Count Two, with 329 days jail credit on both counts. <u>Id.</u> at 73–80.

On direct appeal, counsel for McKinnies filed a brief pursuant to <u>Anders v. California</u>, 386 U.S. 738 (1967). Doc. 5-4. McKinnies subsequently filed a pro se initial brief, arguing the trial court erred by denying McKinnies's motion for judgment of acquittal (ground one) and instructing the jury "with confusing, misleading, and fundamentally defective jury instructions" (ground two). Doc. 5-6. The First District Court of Appeal (First DCA) per curiam affirmed McKinnies's convictions and sentences without a written opinion on October 7, 2020, Doc. 5-7 at 2–3, and issued the mandate on November 4, 2020, <u>id.</u> at 4.

McKinnies filed a pro se motion for postconviction relief pursuant to Florida Rule of Criminal Procedure 3.850 on June 2, 2021. Doc. 5-8 at 5–18. In his Rule 3.850 Motion, McKinnies argued the trial court erred in using "incorrect jury instructions" which allowed him to be sentenced for a crime with which he was not charged (claim one); trial counsel was ineffective for failing to argue within his motion for judgment of acquittal that Count One was not proven beyond a reasonable doubt (claim two); and trial counsel was ineffective for failing to seek the exclusion of a sleeping juror (claim three). Id. at 9–16. On July 15, 2021, the postconviction court denied relief on all grounds. Id. at 19–293. The First DCA per curiam affirmed the postconviction court's denial without a written opinion on March 16, 2022, Doc. 5-9 at 2–3, and issued the mandate on April 13, 2022, id. at 4.

### III. One-Year Limitations Period

This action was timely filed within the one-year limitations period. See 28 U.S.C. § 2244(d).

### IV. Evidentiary Hearing

In a habeas corpus proceeding, the burden is on the petitioner to establish the need for a federal evidentiary hearing. See Chavez v. Sec'y, Fla. Dep't of Corr., 647 F.3d 1057, 1060 (11th Cir. 2011). "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations,

3

which, if true, would entitle the applicant to federal habeas relief." Schriro v. Landrigan, 550 U.S. 465, 474 (2007); Jones v. Sec'y, Fla. Dep't of Corr., 834 F.3d 1299, 1318–19 (11th Cir. 2016). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." Schriro, 550 U.S. at 474. The pertinent facts of this case are fully developed in the record before the Court. Because the Court can "adequately assess [McKinnies's] claim[s] without further factual development," Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), an evidentiary hearing will not be conducted.

## V. Governing Legal Principles
### A. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal petition for habeas corpus. See Ledford v. Warden, Ga. Diagnostic & Classification Prison, 818 F.3d 600, 642 (11th Cir. 2016), abrogation recognized on other grounds by Smith v. Comm'r, Ala. Dep't of Corr., 67 F.4th 1335, 1348 (11th Cir. 2023). "'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" Id. (quoting Greene v. Fisher, 565 U.S. 34, 38 (2011)). As such, federal habeas review of final state court decisions is "greatly circumscribed

and highly deferential." <u>Id.</u> (internal quotation marks omitted) (quoting <u>Hill v. Humphrey</u>, 662 F.3d 1335, 1343 (11th Cir. 2011)).

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the claim on the merits. <u>See</u> <u>Marshall v. Sec'y, Fla. Dep't of Corr.</u>, 828 F.3d 1277, 1285 (11th Cir. 2016). The state court need not issue a written opinion explaining its rationale in order for the state court's decision to qualify as an adjudication on the merits. <u>See</u> <u>Harrington v. Richter</u>, 562 U.S. 86, 100 (2011). Where the state court's adjudication on the merits is unaccompanied by an explanation, the United States Supreme Court has instructed:

> [T]he federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning.

<u>Wilson v. Sellers</u>, 584 U.S. 122, 125 (2018). The presumption may be rebutted by showing that the higher state court's adjudication most likely relied on different grounds than the lower state court's reasoned decision, such as persuasive alternative grounds that were briefed or argued to the higher court or obvious in the record it reviewed. <u>Id.</u> at 125–26, 132.

If the claim was "adjudicated on the merits" in state court, § 2254(d) bars relitigation of the claim unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as

determined by the Supreme Court of the United States;" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); <u>Richter</u>, 562 U.S. at 97–98. The Eleventh Circuit describes the limited scope of federal review pursuant to § 2254 as follows:

> First, § 2254(d)(1) provides for federal review for claims of state courts' erroneous legal conclusions. As explained by the Supreme Court in <u>Williams v. Taylor</u>, 529 U.S. 362, 120 S. Ct. 1495, 146 L.Ed.2d 389 (2000), § 2254(d)(1) consists of two distinct clauses: a "contrary to" clause and an "unreasonable application" clause. The "contrary to" clause allows for relief only "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." <u>Id.</u> at 413, 120 S. Ct. at 1523 (plurality opinion). The "unreasonable application" clause allows for relief only "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." <u>Id.</u>
>
> Second, § 2254(d)(2) provides for federal review for claims of state courts' erroneous factual determinations. Section 2254(d)(2) allows federal courts to grant relief only if the state court's denial of the petitioner's claim "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The Supreme Court has not yet defined § 2254(d)(2)'s "precise relationship" to § 2254(e)(1), which imposes a burden on the petitioner to rebut the state court's factual findings "by clear and convincing evidence." <u>See</u> <u>Burt v. Titlow</u>, 571 U.S. ---, ---, 134 S.

Ct. 10, 15, 187 L.Ed.2d 348 (2013); accord Brumfield v. Cain, 576 U.S. ---, ---, 135 S. Ct. 2269, 2282, 192 L.Ed.2d 356 (2015). Whatever that "precise relationship" may be, "'a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.'" Titlow, 571 U.S. at ---, 134 S. Ct. at 15 (quoting Wood v. Allen, 558 U.S. 290, 301, 130 S. Ct. 841, 849, 175 L.Ed.2d 738 (2010)).

Tharpe v. Warden, 834 F.3d 1323, 1337 (11th Cir. 2016). Also, deferential review under § 2254(d) generally is limited to the record that was before the state court that adjudicated the claim on the merits. See Cullen v. Pinholster, 563 U.S. 170, 182 (2011) (stating the language in § 2254(d)(1) "requires an examination of the state-court decision at the time it was made").

Thus, "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." Titlow, 571 U.S. at 19. "Federal courts may grant habeas relief only when a state court blundered in a manner so 'well understood and comprehended in existing law' and 'was so lacking in justification' that 'there is no possibility fairminded jurists could disagree.'" Tharpe, 834 F.3d at 1338 (quoting Richter, 562 U.S. at 102–03). This standard is "meant to be" a "difficult" one to meet. Richter, 562 U.S. at 102. Thus, to the extent that the petitioner's claims were adjudicated on the merits in the state courts, they must be evaluated under 28 U.S.C. § 2254(d).

### B. Exhaustion/Procedural Default

There are prerequisites to federal habeas review. Before bringing a § 2254 habeas action in federal court, a petitioner must exhaust all state court remedies that are available for challenging his state conviction. See 28 U.S.C. § 2254(b)(1)(A). To exhaust state remedies, the petitioner must "fairly present[]" every issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral review. Castille v. Peoples, 489 U.S. 346, 351 (1989) (emphasis omitted). Thus, to properly exhaust a claim, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999).

In addressing exhaustion, the United States Supreme Court explained:

> Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the ""opportunity to pass upon and correct" alleged violations of its prisoners' federal rights."' Duncan v. Henry, 513 U.S. 364, 365, 115 S. Ct. 887, 130 L.Ed.2d 865 (1995) (per curiam) (quoting Picard v. Connor, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L.Ed.2d 438 (1971)). To provide the State with the necessary "opportunity," the prisoner must "fairly present" his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim. Duncan, supra, at 365–366, 115 S. Ct. 887; O'Sullivan v. Boerckel, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L.Ed.2d 1 (1999).

Baldwin v. Reese, 541 U.S. 27, 29 (2004).

A state prisoner's failure to properly exhaust available state remedies results in a procedural default which raises a potential bar to federal habeas review. The United States Supreme Court has explained the doctrine of procedural default as follows:

> Federal habeas courts reviewing the constitutionality of a state prisoner's conviction and sentence are guided by rules designed to ensure that state-court judgments are accorded the finality and respect necessary to preserve the integrity of legal proceedings within our system of federalism. These rules include the doctrine of procedural default, under which a federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule. See, e.g., Coleman,[3] supra, at 747–748, 111 S. Ct. 2546; Sykes,[4] supra, at 84–85, 97 S. Ct. 2497. A state court's invocation of a procedural rule to deny a prisoner's claims precludes federal review of the claims if, among other requisites, the state procedural rule is a nonfederal ground adequate to support the judgment and the rule is firmly established and consistently followed. See, e.g., Walker v. Martin, 562 U.S. --, --, 131 S. Ct. 1120, 1127–1128, 179 L.Ed.2d 62 (2011); Beard v. Kindler, 558 U.S. --, --, 130 S. Ct. 612, 617–618, 175 L.Ed.2d 417 (2009). The doctrine barring procedurally defaulted claims from being heard is not without exceptions. A prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law. See Coleman, 501 U.S., at 750, 111 S. Ct. 2546.

---

[3] Coleman v. Thompson, 501 U.S. 722 (1991).
[4] Wainwright v. Sykes, 433 U.S. 72 (1977).

Martinez v. Ryan, 566 U.S. 1, 9–10 (2012). Thus, procedural defaults may be excused under certain circumstances. Notwithstanding that a claim has been procedurally defaulted, a federal court may still consider the claim if a state habeas petitioner can show either (1) cause for and actual prejudice from the default; or (2) a fundamental miscarriage of justice. Ward v. Hall, 592 F.3d 1144, 1157 (11th Cir. 2010). In order for a petitioner to establish cause,

> the procedural default "must result from some objective factor external to the defense that prevented [him] from raising the claim and which cannot be fairly attributable to his own conduct." McCoy v. Newsome, 953 F.2d 1252, 1258 (11th Cir. 1992) (quoting Carrier, 477 U.S. at 488, 106 S. Ct. 2639).[5] Under the prejudice prong, [a petitioner] must show that "the errors at trial actually and substantially disadvantaged his defense so that he was denied fundamental fairness." Id. at 1261 (quoting Carrier, 477 U.S. at 494, 106 S. Ct. 2639).

Wright v. Hopper, 169 F.3d 695, 706 (11th Cir. 1999).

In the absence of a showing of cause and prejudice, a petitioner may receive consideration on the merits of a procedurally defaulted claim if the petitioner can establish that a fundamental miscarriage of justice, the continued incarceration of one who is actually innocent, otherwise would result. The Eleventh Circuit has explained:

> [I]f a petitioner cannot show cause and prejudice, there remains yet another avenue for him to receive consideration on the merits of his procedurally

---

[5] Murray v. Carrier, 477 U.S. 478 (1986).

> defaulted claim. "[I]n an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." <u>Carrier</u>, 477 U.S. at 496, 106 S. Ct. at 2649. "This exception is exceedingly narrow in scope," however, and requires proof of actual innocence, not just legal innocence. <u>Johnson v. Alabama</u>, 256 F.3d 1156, 1171 (11th Cir. 2001).

<u>Ward</u>, 592 F.3d at 1157. "To meet this standard, a petitioner must 'show that it is more likely than not that no reasonable juror would have convicted him' of the underlying offense." <u>Johnson v. Alabama</u>, 256 F.3d 1156, 1171 (11th Cir. 2001) (quoting <u>Schlup v. Delo</u>, 513 U.S. 298, 327 (1995)). Additionally, "'[t]o be credible,' a claim of actual innocence must be based on reliable evidence not presented at trial." <u>Calderon v. Thompson</u>, 523 U.S. 538, 559 (1998) (quoting <u>Schlup</u>, 513 U.S. at 324). With the rarity of such evidence, in most cases, allegations of actual innocence are ultimately summarily rejected. <u>Schlup</u>, 513 U.S. at 324.

## C. Custody

A district court only has jurisdiction to entertain a § 2254 petition if the petitioner is "in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). To fulfill the "in custody" requirement, "the habeas petitioner [must] be 'in custody' under the conviction

or sentence under attack at the time his petition is filed." Maleng v. Cook, 490

U.S. 488, 490–91 (1989). Generally, if the petitioner's state sentence has fully

expired, he does not meet the "in custody" requirement. Id. at 492.

## D. Ineffective Assistance of Trial Counsel

"The Sixth Amendment guarantees criminal defendants the effective

assistance of counsel. That right is denied when a defense attorney's

performance falls below an objective standard of reasonableness and thereby

prejudices the defense." Yarborough v. Gentry, 540 U.S. 1, 5 (2003) (per

curiam) (first citing Wiggins v. Smith, 539 U.S. 510, 521 (2003); and then

Strickland v. Washington, 466 U.S. 668, 687 (1984)).

> To establish deficient performance, a person
> challenging a conviction must show that "counsel's
> representation fell below an objective standard of
> reasonableness." [Strickland,] 466 U.S. at 688, 104 S.
> Ct. 2052.  A court considering a claim of ineffective
> assistance must apply a "strong presumption" that
> counsel's representation was within the "wide range"
> of reasonable professional assistance. Id., at 689, 104
> S. Ct. 2052. The challenger's burden is to show "that
> counsel made errors so serious that counsel was not
> functioning as the 'counsel' guaranteed the defendant
> by the Sixth Amendment." Id., at 687, 104 S. Ct. 2052.
>
> With respect to prejudice, a challenger must
> demonstrate "a reasonable probability that, but for
> counsel's unprofessional errors, the result of the
> proceeding would have been different. A reasonable
> probability is a probability sufficient to undermine
> confidence in the outcome." Id., at 694, 104 S. Ct. 2052.
> It is not enough "to show that the errors had some
> conceivable effect on the outcome of the proceeding."

<u>Id.</u>, at 693, 104 S. Ct. 2052. Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." <u>Id.</u>, at 687, 104 S. Ct. 2052.

<u>Richter</u>, 562 U.S. at 104. The Eleventh Circuit has recognized "the absence of any iron-clad rule requiring a court to tackle one prong of the <u>Strickland</u> test before the other." <u>Ward</u>, 592 F.3d at 1163. Since both prongs of the two-part <u>Strickland</u> test must be satisfied to show a Sixth Amendment violation, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." <u>Id.</u> (citing <u>Holladay v. Haley</u>, 209 F.3d 1243, 1248 (11th Cir. 2000)). As stated in <u>Strickland</u>: "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." <u>Strickland</u>, 466 U.S. at 697.

A state court's adjudication of an ineffectiveness claim is accorded great deference.

> "[T]he standard for judging counsel's representation is a most deferential one." <u>Richter</u>, 562 U.S. at ---, 131 S. Ct. at 788. But "[e]stablishing that a state court's application of <u>Strickland</u> was unreasonable under § 2254(d) is all the more difficult. The standards created by <u>Strickland</u> and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." <u>Id.</u> (citations and quotation marks omitted). "The question is not whether a federal court believes the state court's determination under the <u>Strickland</u> standard was incorrect but whether that determination was unreasonable — a substantially

> higher threshold." <u>Knowles v. Mirzayance</u>, 556 U.S.
> 111, 123, 129 S. Ct. 1411, 1420, 173 L.Ed.2d 251 (2009)
> (quotation marks omitted). If there is "any reasonable
> argument that counsel satisfied <u>Strickland</u>'s
> deferential standard," then a federal court may not
> disturb a state-court decision denying the claim.
> <u>Richter</u>, 562 U.S. at ---, 131 S. Ct. at 788.

<u>Hittson v. GDCP Warden</u>, 759 F.3d 1210, 1248 (11th Cir. 2014); <u>Knowles v. Mirzayance</u>, 556 U.S. 111, 123 (2009). In other words, "[i]n addition to the deference to counsel's performance mandated by <u>Strickland</u>, the AEDPA adds another layer of deference—this one to a state court's decision—when we are considering whether to grant federal habeas relief from a state court's decision." <u>Rutherford v. Crosby</u>, 385 F.3d 1300, 1309 (11th Cir. 2004). As such, "[s]urmounting <u>Strickland</u>'s high bar is never an easy task." <u>Padilla v. Kentucky</u>, 559 U.S. 356, 371 (2010).

## VI. Findings of Fact and Conclusions of Law

### A. "In Custody" Requirement

In the Response, Respondents argue that McKinnies is not "in custody" as it relates to his conviction for possession of less than twenty grams of cannabis (Count Two) as he received time served on the conviction at sentencing. Response at 17. In his Reply, McKinnies simply states he "disagrees and states that he does satisfy the in 'custody' requirement." Reply at 3. The Court agrees with Respondents that McKinnies does not meet the "in custody" requirement as to Count Two. On February 5, 2020, McKinnies was

sentenced to time served as to Count Two and thus his sentence was fully expired as to that Count as of the time he filed his Petition. See Aquino v. Sec'y, Dep't of Corr., No. 8:21-cv-278-WFJ-SPF, 2024 WL 361094, *6, n.6 (M.D. Fla. Jan. 31, 2024) ("When [petitioner] filed his § 2254 petition in 2021, he was not 'in custody' on the violation of a domestic injunction conviction because he received a sentence of time-served on November 20, 2018, and, thus, his sentence 'fully expired' on that date."). Accordingly, the Court only has jurisdiction to review this Petition as it relates to McKinnies's conviction for burglary to a dwelling (Count One).

## B. Ground One

McKinnies contends the trial court erred in its jury instructions relating to burglary in that the instructions did not comport with the charging information. Petition at 5. According to McKinnies, this resulted in "a conviction and sentence for a crime not charged in the [second] amended information." Id. In its Second Amended Information, the State charged McKinnies with burglary as follows:

> WAYNE LAMAR MCKINNIES on or between March 9, 2019 and March 10, 2019, in the county of Duval and the State of Florida, did unlawfully enter or remain in a structure, to-wit: a dwelling, the property of Gezim Sheno, with the intent to commit an offense therein, to-wit: Theft, contrary to the provisions of Section 810.02(3)(b), Florida Statutes.

Doc. 5-2 at 38. The trial court instructed the jury on the offense of burglary, in relevant part, as follows:

> To prove the crime of Burglary, the State must prove the following two elements beyond a reasonable doubt:
>
> > 1. WAYNE LAMAR MCKINNIES entered a structure owned by or in the possession of Gezim Sheno.
> >
> > 2. At the time of entering the structure, WAYNE LAMAR MCKINNIES had the intent to commit an offense other than burglary or trespass in that structure.
>
> You may infer that WAYNE LAMAR MCKINNIES had the intent to commit a crime inside a structure if the entering or attempted entering of the structure was done stealthily and without the consent of the owner or occupant.
>
> The intent with which an act is done is an operation of the mind and, therefore, is not always capable of direct and positive proof. It may be established by circumstantial evidence like any other fact in this case.
>
> Even though an unlawful entering or remaining in a structure or conveyance is proved, if the evidence does not establish that it was done with the intent to commit an offense other than theft the defendant must be found not guilty of burglary.
>
> Proof of possession by an accused of property recently stolen by means of a burglary, unless satisfactorily explained, may justify a conviction of burglary if the circumstances of the burglary and of the possession of

> the stolen property convince you beyond a reasonable
> doubt that the defendant committed the burglary.

Doc. 5-2 at 43. Neither party objected to this instruction as written or as read

to the jury. Doc. 5-3 at 242–43, 254, 320–21.

McKinnies raised a substantially similar claim on direct appeal, stating:

"Trial court committed per se reversible error when it instructed the jury with

confusing, misleading, and fundamentally defective jury instructions violating

[McKinnies's] rights as secured by the 14th Amendment and Art. 1, Section 9

of the Florida Constitution." Doc. 5-6 at 7, 12–14. Specifically, McKinnies

contends it was inappropriate to switch the words "done with the intent to

commit . . . [an offense other than burglary or trespass]" to "done with the

intent to commit an offense other than theft." Id. at 13–14. Without requiring

a response from the State, the First DCA affirmed the appeal without written

opinion. Doc. 5-7.

McKinnies also raised a substantially similar claim in his Rule 3.850

Motion. Doc. 5-8 at 9–12. After quoting the language of the second amended

information and that of the jury instructions, the postconviction court

summarily denied relief, stating:

> Claims of trial court error are not cognizable in
> a Rule 3.850 motion for postconviction relief. See
> McCrae v. State, 437 So. 2d 1388, 1390 (Fla. 1983)
> (holding that a defendant generally may not raise a
> claim of trial court error in a motion collaterally
> attacking a judgment); Johnson v. State, 985 So. 2d

1215, 1215 (Fla. 1st DCA 2008) (a claim of trial court error is not cognizable in a Rule 3.850 motion). Moreover, even if Defendant had framed Ground One as a claim of ineffective assistance of counsel, he would still not be entitled to relief.

The State charged Defendant with burglary based on his unlawful entrance into Gezim Sheno's property while having the criminal intent to commit theft. This is precisely what burglary is: the unlawful entering or remaining in a structure with the intent to commit an offense therein. Wilkes v. State, 123 So. 3d 632, 636 (Fla. 4th DCA 2013). A charging document is not required to specifically identify the crime the defendant intended to commit. Morgan v. State, 198 So. 3d 812, 818 (Fla. 2d DCA 2016) ("It is well settled that the State is not required to specify the intended offense for burglary in its charging document and that a charging document tracking the language of the burglary statute will generally be sufficient."). Nevertheless here, the State's charging information identified theft as the intended predicate offense. In sum, there are no defects in the charging information.

The trial court's jury instructions reflected the standard jury instructions. See In re Standard Jury Instructions in Criminal Cases, 109 So. 3d 721, 723-25 (Fla. 2013); see also Stephens v. State, 787 So. 2d 747, 755 (Fla. 2001) ("The standard jury instructions are presumed correct and are preferred over special instructions."). The only error in the instructions occurred when the trial court substituted the word "theft" for "burglary" in the section about unlawful entering:

> Even though an unlawful entering or remaining in a structure or conveyance is proved, if the evidence does not establish that it was done with the intent to commit *an offense other than theft*, the defendant must be found not guilty of burglary.

(emphasis added).

The trial court should not have said the emphasized portion of the instruction quoted above. See In re Standard Jury Instructions in Criminal Cases, 109 So. 3d at 725 ("Even though an unlawful [entering] [remaining in] a [structure] [conveyance] is proved, if the evidence does not establish that it was done with the intent to commit [(the crime alleged)] [an offense other than burglary or trespass], the defendant must be found not guilty of burglary."). In relevant part, the court should have said either (a) "done with the intent to commit theft" or (b) "done with the intent to commit an offense other than burglary or trespass." However, there is no reasonable probability that this portion of the instruction resulted in the jury finding Defendant guilty as charged. If anything, the error benefitted Defendant because, when taken in isolation, the quoted instruction provides that theft cannot serve as the underlying intended offense necessary to sustain a burglary conviction. Furthermore, the other portions of the trial court's burglary instruction – which were in all ways correct – cured the lone error. See Freeman v. State, 787 So. 2d 152 (Fla. 4th DCA 2001); Padilla v. State, 212 So. 3d 491 (Fla. 2d DCA 2017). For these reasons, the Court denies Ground One of Defendant's motion.

Doc. 5-8 at 23–25 (internal record citations omitted). The First DCA per curiam affirmed the postconviction court's denial of relief without a written opinion. Doc. 5-9.

While Respondents acknowledge that McKinnies raised this argument before the state appellate court through his direct appeal and the state trial court through his Rule 3.850 Motion, they nevertheless assert that the claim

is unexhausted. Response at 19–25. Essentially, Respondents argue that the appellate court's adjudication did not reach the merits of this issue because counsel did not make a specific objection at trial, and that under Florida law, it was subject to review by the First DCA only for fundamental error. Id. at 19–21. Further, they suggest that because the postconviction court denied the claim, citing case law that trial court error is not cognizable in a Rule 3.850 motion, and only addressed the merits of an ineffective assistance of counsel claim in the alternative, the claim in unexhausted. Id. at 24–25 (citing Davis v. Singletary, 119 F.3d 1471, 1479 (11th Cir. 1997) ("It is settled that once the state courts have ignored any procedural bar and rejected a claim on the merits – not in the alternative but as the only basis of decision – that claim is not barred from federal habeas review.). McKinnies responds by arguing that the error was fundamental and, thus, he is entitled to review of the state appellate court's review of that argument. Reply at 7–8.

Under Florida law, a jury instruction error can be challenged even without a contemporaneous objection if the error amounts to fundamental error. See Archer v. State, 673 So. 2d 17, 20 (Fla. 1996) (confirming jury instruction claims are subject to contemporaneous objection rule and fundamental error analysis). On appeal, McKinnies specifically argued that the instructions were "fundamentally" defective. See Doc. 5-6 at 7, 12–14. Considering this principle, and because the First DCA affirmed McKinnies's

20

convictions and sentences without stating the basis for its affirmance, Respondents' procedural default argument fails. See Parker v. Sec'y, Dep't of Corr., 331 F.3d 764, 772–73 (11th Cir. 2003), abrogated on other grounds by, Parker v. United States, 993 F.3d 1257 (11th Cir. 2021).

Given the procedural history, the appellate court may have affirmed McKinnies's convictions and sentences on the merits. If the First DCA addressed the merits, this adjudication is entitled to deference under AEDPA. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law and did not involve an unreasonable application of clearly established federal law. Nor was the state court's adjudication based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Accordingly, McKinnies is not entitled to relief on the basis of this claim.

Nevertheless, if the state court's adjudication is not entitled to deference, McKinnies's claim still fails. "The fact that [a jury] instruction was allegedly incorrect under state law is not a basis for habeas relief." Estelle v. McGuire, 502 U.S. 62, 71–72 (1991). Such an error only warrants relief if the "the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." Id. at 72 (quoting Cupp v. Naughten, 414 U.S. 141, 147 (1973)). To make that determination, the instruction "must be considered in

the context of the instructions as a whole and the trial record." Id. "[I]n reviewing an ambiguous instruction . . . we inquire 'whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way' that violates the Constitution." Id. (quoting Boyde v. California, 494 U.S. 370, 380 (1990).

Here, the trial court's instruction was consistent with the standard jury instruction in all other respects. Importantly, prior to the flawed instruction, the court instructed the jury that, to find McKinnies guilty of burglary, it must find that: "At the time of entering the structure, [McKinnies] had the intent to commit an offense other than burglary or trespass in that structure." Doc. 5-2 at 43. Moreover, the requirement that McKinnies had the intent to commit an offense other than burglary or trespass was addressed as early as the State's opening statement and within both parties' closing statements. Doc. 5-3 at 159, 277, 286, 295. Indeed, the arguments reflect that the State's case was designed to show McKinnies entered the dwelling with the intent to commit a theft. Id. at 159, 277, 286–87, 288, 290, 295, 296, 300. Thus, considering the context of the instruction as a whole as well as the trial record, there is no reasonable likelihood that the jury applied the challenged instruction in a way that violated the Constitution. Accordingly, McKinnies is not entitled to federal habeas relief as to Ground One.

## C. Ground Two

McKinnies alleges counsel was ineffective for failing to raise the "beyond a reasonable doubt" standard in support of his motion for judgment of acquittal. Petition at 7. According to McKinnies, the evidence against him was "highly circumstantial" and met a preponderance of the evidence standard "at best," not a beyond a reasonable doubt standard, and that had counsel argued such, there is a reasonable probability the result of the proceedings would have been different. Id.

McKinnies raised this issue in ground two of his Rule 3.850 motion. Doc. 5-8 at 12–14. The postconviction court first summarized the evidence presented at McKinnies's trial:

> Gezim Sheno moved to the United States from Albania in 1992. He resides in the Riverside section of Jacksonville[,] and he owns approximately nine residential rental properties in the area. One such property is located at 2670 Gilmore Street. In March 2019, the house had been vacant for several months while Sheno renovated the kitchen. As part of the renovation, Sheno installed new cabinets and appliances. Someone burglarized the property in early March 2019, which prompted Sheno to install a surveillance camera on a tree near the house. When the camera's sensor detected motion, it would automatically take surveillance photographs.
>
> Sheno inspected the property on March 9th and found it to be in order. However, when he returned the following day, Sheno discovered that someone had burglarized the property. The burglar had damaged the back door and some of the kitchen cabinets. The

23

microwave was missing. From his surveillance camera, Sheno retrieved numerous photos of the person he believed committed the burglary. The pictures show a man walking back and forth outside the house while pushing a cart that contained a microwave.

Robert Kinder, a patrol officer with the Jacksonville Sheriff's Office (JSO), was the first officer to respond to the scene. Sheno showed Officer Kinder the photos captured by his surveillance camera and the damage inside the home. While it was possible the burglar could have kicked open the door, Officer Kinder suspected the burglar would have more likely needed a tool to open it. Officer Kinder observed that someone had pushed over the fence that separated Sheno's property from the adjacent lot.

Officer Kinder asked for an evidence technician to evaluate the scene and JSO detective John Matzen responded. Detective Matzen reviewed the property damage and the surveillance photos, but he did not check for fingerprints because the suspect in the surveillance photos wore socks on his hands.

Jane Doe[6] is a member of the JSO burglary task unit. On March 12, 2019, Officer Doe went to the Riverside area to search for the burglar. During her investigation, she encountered Comadore Perry, a retired Navy officer who has been employed as a letter carrier with the United States Postal Service since 2012. Perry delivers mail in the Riverside area. Because he walks his route, he interacts with area residents and is familiar with the neighborhood. Officer Doe showed Perry the surveillance photo from the crime scene and asked Perry if he recognized the man in the picture. Perry identified the man as

---

[6] The actual name of this officer has been redacted in the postconviction court's order and corresponding transcript. For ease of reading, the Court will refer to her as Officer Jane Doe.

someone he regularly saw walking by the railroad track near King Street between 10:00 and 11:00 AM. Perry noticed the man in that area nearly every day over the previous couple of months; however, he did not know the man's name or where he lived or worked.

On March 13th, Officer Doe and her partner stationed themselves at the location where Perry regularly observed the suspect. Officer Doe and her partner were wearing plain clothes and they were seated in an unmarked vehicle. At 10:15 AM, they observed Defendant – who appeared to be the man in the surveillance photos – walk by the railroad tracks. Officer Doe particularly noticed that Defendant wore large brown boots and had tattoos on his left arm because those features were consistent with the man in the surveillance photos. A marked JSO patrol car stopped Defendant. During a search incident to arresting Defendant, officers found marijuana in his pocket.

Defendant testified. In March 2019, Defendant was unemployed and would make money by collecting window frames, aluminum cans, copper, and other materials from neighborhood trash piles. He would search for properties that appeared to be vacant, unless the property displayed a no trespassing sign. He would use a cart to transport the items. Defendant admitted that he took window frames and a microwave from Sheno's property. Defendant alleged he found the items in the property's backyard without entering the house. He conceded that he was the man in the surveillance photos. He also conceded that he entered the property's yard through its fence and he acknowledged that he was the lone person depicted in the photos taken by the motion-activated surveillance camera.

Doc. 5-8 at 20–23 (internal record citations omitted and footnote added).

Having summarized the evidence presented against McKinnies, the postconviction court denied relief, stating:

> In Ground Two, Defendant avers that Defense Counsel was ineffective because he failed to cite the "beyond a reasonable doubt" standard in support of his motion for a judgment of acquittal. Defendant maintains the State failed to prove that he entered the dwelling in Count One. He believes that if only Defense Counsel had specifically built his argument on the "beyond a reasonable doubt" evidentiary standard, the trial court would have granted the JOA motion.

> "The purpose of a motion for judgment of acquittal is to challenge the legal sufficiency of the evidence . . . ." Cunningham v. State, 385 So. 2d 721, 722 (Fla. 3d DCA 1980). In moving for a judgment of acquittal, a defendant admits not only the facts stated in the evidence, but also every reasonable conclusion favorable to the State that the fact-finder might fairly infer from the evidence." State v. Odom, 56 So. 3d 46, 49 (Fla. 5th DCA 2011). "The trial court should not grant a motion for judgment of acquittal unless there is *no view* of the evidence which the jury might take favorable to the opposite party that can be sustained under the law." McBride v. State, 7 So. 3d 1146, 1148 (Fla. 2d DCA 2009) (emphasis added and internal quotations omitted). Here, Defense Counsel moved for a judgment of acquittal at the close of the State's evidence and again at the close of the Defense's evidence. In each instance, Defense Counsel summarized the State's evidence and argued it was legally insufficient to support Defendant's convictions. The trial court denied Defense Counsel's motions.

> Thus, the record shows that Defense Counsel tailored his arguments to the correct legal standard.

> Moreover, in light of the substantial evidence of
> Defendant's guilt, there is no reasonable probability
> the trial court would have granted the JOA motion,
> regardless of how specifically or ardently Defense
> Counsel argued in favor of it. Accordingly, the Court
> denies Ground Two of the Defendant's motion.

Doc. 5-8 at 26 (internal record citations omitted). The First DCA per curiam

affirmed the denial of relief without a written opinion. Doc. 5-9.

To the extent that the appellate court decided McKinnies's claim on the

merits, the Court will address the claim in accordance with the deferential

standard for federal court review of state court adjudications. After a review of

the record and the applicable law, the Court concludes that the state court's

adjudication of the claim was not contrary to clearly established federal law,

did not involve an unreasonable application of clearly established federal law,

and was not based on an unreasonable determination of the facts in light of the

evidence presented in the state court proceedings. Thus, McKinnies is not

entitled to relief on the basis of the claim.

However, assuming arguendo that the appellate court's adjudication of

the claim is not entitled to deference, McKinnies's claim does not have merit.

Trial counsel made the following argument in support of his motion for

judgment of acquittal after the presentation of the State's case:

> Your Honor, at this time the Defense would make a
> motion for judgment of acquittal for the State's failure
> to prove a prima facie case. Even in [the] light most

favorable to them, the State did not prove an essential element of burglary.

There was no testimony that Mr. McKinnies ever entered the structure. There was no physical photo evidence that he ever entered the structure. There is no DNA evidence that he entered the structure. None of the cops had any indications that he was the one who entered the structure.

So we are asking for a judgment of acquittal based on the failure of the State to provide a crucial element of the crime of burglary.
. . .
There's also not -- I also, in another avenue, do not believe that they proved that he had an intent to commit a crime therein other than trespassing.

Doc. 5-8 at 143–44. After the defense rested, trial counsel presented a renewed

motion for judgment of acquittal, arguing:

Your Honor, the Defense would renew their motion for a judgment of acquittal based on the fact that even in the light most favorable to the State, they did not prove a prima facie case.

When it comes to burglary, they did not prove, even in the most favorable light, the necessary element that he entered the structure. There is no evidence that anyone entered the home -- or that this defendant entered the home, I mean.

Your Honor, there are no eyewitnesses. There's no DNA data, not even any pictures that they have showing him entering. All you can see is steps, which they claim is the side of the house.

And at the time of entering the structure, an element too, that he had the intent to commit an offense, while they can infer criminal intent, if he was -- if it was

> taken stealthily -- none of these actions were done
> stealthily. It was in broad daylight. Face wasn't
> covered. His arms and legs weren't covered. He didn't
> have a hat or hoodie or anything -- nothing was -- he
> wasn't trying to conceal himself in any way.
>
> And, honestly, when you take those two things into
> account with the testimony that's been given, the most
> that the State has been able to prove here would be a
> trespass.

Id. at 184–85.

To prove burglary under Florida law, the State must prove that a
defendant: (1) entered a dwelling, structure, or a conveyance, and (2) had the
intent to commit an offense therein. § 810.02(1)(b), Fla. Stat. Moreover, under
Florida law,

> A defendant, in moving for a judgment of acquittal,
> admits not only the facts stated in the evidence
> adduced, but also admits every conclusion favorable to
> the adverse party that a jury might fairly and
> reasonably infer from the evidence. The courts should
> not grant a motion for judgment of acquittal unless the
> evidence is such that no view which the jury may
> lawfully take of it favorable to the opposite party can
> be sustained under the law.

Lynch v. State, 293 So. 2d 44, 45 (Fla. 1974).

Here, counsel used the correct standard for arguing his motions for
judgment of acquittal and, thus, was not deficient simply for not stating the
beyond a reasonable doubt standard. Further, considering the evidence
presented at trial, McKinnies cannot show prejudice. The owner of the

dwelling testified during this trial that he was at the property the day before the burglary and witnessed nothing out of the ordinary: the door was intact, and the microwave was inside the house. Doc. 5-8 at 77, 83. The owner testified that on March 10, 2019, he went to the property to find the door "destroyed," the kitchen "broken," and the microwave missing, as corroborated by responding police officers. Id. at 77–78, 80–82, 88, 89, 96, 99-100, 101, 104–05, 106, 107. The owner had placed a trail camera in a tree adjacent to the house after a previous robbery, and after this incident, he pulled photographs of an individual with socks on their hands leaving the house with the microwave on a cart. Id. at 78–79, 83–85, 90, 97, 105. The neighborhood letter carrier recognized the man in the photographs as someone who he would see walking near the railroad tracks at King and Gilmore Streets, nearby the dwelling in question, generally between 10-11 A.M. Id. at 114–15, 116–17, 126–27. Following this lead, officers conducted surveillance in that area the following day and were able to locate McKinnies. Id. at 127, 130, 140. Officer Doe testified McKinnies appeared to be the individual in the surveillance photograph that she had to compare likenesses. Id. at 127, 138. Officer Doe noted that McKinnies had tattoos on his left arm like the individual in the picture, and he wore similar clothing and boots as the individual in the photograph. Id. at 127, 128–29, 134, 136–37, 139. Additionally, McKinnies testified. He stated he was unemployed and would sell things to the scrap yard

for money. Id. at 169–170. He admitted that he was the individual in the surveillance photograph, but said he only took a microwave from a trash pile and never entered the dwelling. Id. at 172–73, 174, 175–77, 182. Considering this evidence with every inference favorable to the State, there is no reasonable probability even a more artfully argued motion for judgment of acquittal would have been granted. McKinnies is thus not entitled to federal habeas relief on the basis of this claim.

### D. Ground Three

Lastly, McKinnies asserts counsel was ineffective for failing to object to the presence of a sleeping juror. Petition at 8. McKinnies states he informed counsel that the juror was nodding and closing his eyes, but that counsel dismissed his concerns and did not object or move to replace the sleeping juror. Id. McKinnies avers that had counsel objected, there is a reasonable probability the result of the proceeding would have been different. Id.

McKinnies raised this issue in ground three of his Rule 3.850 motion. Doc. 5-8 at 15–16. The postconviction court denied relief on this claim, stating:

> In Ground Three, Defendant argues Defense Counsel should have asked the trial court to replace one of the jurors. Defendant claims the unnamed juror was "nodding off" during portions of Gezim Sheno's testimony. Defendant alleges he brought this issue to Defense Counsel's attention during Sheno's testimony, but that Defense Counsel refused to do anything about it. Defendant does not contend that the juror missed

Defendant's testimony (or the testimony of any witnesses aside from Sheno).

First, the record belies Defendant's allegation. At the outset of his closing argument to the jury, Defense Counsel specifically noted that the jury had been engaged throughout Defendant's trial:

> MR. MILLIGAN: Good afternoon, ladies and gentlemen. First of all, I would just like to thank you for the time -- for everyone's participation in today's events here today. I asked in jury selection if y'all would be attentive to not only the State but to our side as well, *and everyone was paying good attention and taking good notes*. So I thank you for taking it seriously. This is a serious matter.

(emphasis added).

Defense Counsel could not have made that statement in good faith if, as Defendant now contends, a member of the jury was nodding off during portions of Sheno's testimony. <u>See</u> R. Regulating Fla. Bar. 4-3.3 (duty of candor). And even if the court were to accept Defendant's allegations *arguendo*, Defendant cannot establish the prejudice that <u>Strickland</u> demands.

To demonstrate prejudice under <u>Strickland</u>, Defendant needs to show that if only Defense Counsel had successfully moved to replace the juror in question, there is a reasonable probability that ultimate outcome of Defendant's trial would have changed. Stated differently, Defendant must show there is a reasonable probability that the juror's "nodding off" ultimately resulted in the jury finding Defendant guilty. The record shows Defendant cannot carry that burden.

Defendant alleges that a juror nodded off during portions of Sheno's testimony. The record shows that Sheno's testimony was thoroughly inculpatory to Defendant. Indeed, it was during Sheno's testimony that the State presented some of its weightiest evidence of Defendant's guilt: surveillance photographs from Sheno's security camera that captured Defendant at the crime scene during the time in question. In light of the incriminating nature of Sheno's testimony, Defendant may well have *benefited* if one of the jurors nodded off during that portion of the trial. Certainly, Defendant cannot demonstrate that a juror missing portions of Sheno's incriminating testimony somehow *reduced* the likelihood of an acquittal.

Defendant's claim rests o[n] this sequence of but-for inferences: (1) if only Defense Counsel had made the appropriate motion, the trial court would have actually removed the sleeping juror and replaced him or her with an alternate and (2) the presence of the alternate juror in the deliberation room would have changed the ultimate result of Defendant's trial. However, the overwhelming evidence of Defendant's guilt renders this scenario implausible. See Maharaj v. State, 778 So. 2d 944, 951 (Fla. 2000) ("Postconviction relief cannot be based on speculation or possibility."). Indeed, even if the court held an evidentiary hearing on Ground Three and Defense Counsel admitted (a) that he knew one of the jurors was nodding off during Sheno's testimony and (b) that he had no legitimate strategic reason for failing to bring the issue to the trial court's attention, there would still be no basis for awarding postconviction relief. See Strickland, 466 U.S. at 688 (to prevail on a claim of ineffective assistance of counsel, the defendant must show there is a reasonable probability that his lawyer's deficient performance changed the ultimate outcome of his trial). For these reasons, the Court denies Ground Three of Defendant's motion.

33

Doc. 5-8 at 27–28 (internal record citations omitted). The First DCA per curiam affirmed the denial of relief without a written opinion. Doc. 5-9.

To the extent that the appellate court decided this claim on the merits, the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of the claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts considering the evidence presented in the state court proceedings. Thus, McKinnies is not entitled to relief on the basis of the claim.

Even assuming arguendo that the appellate court's adjudication of the claim is not entitled to deference, the claim does not have merit. Considering McKinnies's allegations in conjunction with the record, he cannot show prejudice. McKinnies only asserts he witnessed the juror "nodding off" during Sheno's testimony. McKinnies does not identify any allegedly exculpatory testimony from Sheno, which may have caused the allegedly sleeping juror to find him not guilty. Rather, as noted by the postconviction court, Sheno's testimony was the most incriminating evidence of the State's case. It was during Sheno's testimony that the State introduced testimony that, the day prior to the burglary, the new microwave was inside the property and the

property was not in the damaged condition it was post-burglary. It was also during Sheno's testimony that the State introduced the surveillance pictures showing McKinnies hauling the microwave away from the house, wearing socks on his hands. For these reasons, McKinnies cannot show prejudice and is thus not entitled to federal habeas relief on this basis. See Ward, 592 F.3d at 1163 (stating "a court need not address the performance prong if the petitioner cannot meet the prejudice prong").

## VII. Certificate of Appealability
## Pursuant to 28 U.S.C. § 2253(c)(1)

If McKinnies seeks issuance of a certificate of appealability, the undersigned opines that a certificate of appealability is not warranted. The Court should issue a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, McKinnies "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. See Slack, 529 U.S. at 484. However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Id. Upon consideration of the record as a whole, the Court will deny a certificate of appealability.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1.     The Petition (Doc. 1) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE**.

2.     The Clerk of the Court shall enter judgment denying the Petition and dismissing this case with prejudice.

3.     The Clerk of the Court is directed to update McKinnies's address to Okaloosa Work Camp, 3189 Colonel Greg Malloy Road, Crestview, Florida 32539.

4.     If McKinnies appeals the denial of the Petition, the Court denies a certificate of appealability. Because the Court has determined that a certificate

of appealability is not warranted, the Clerk shall terminate from the pending

motions report any motion to proceed on appeal as a pauper that may be filed

in this case. Such termination shall serve as a denial of the motion.

5.      The Clerk of the Court is directed to close this case and terminate

any pending motions.

**DONE AND ORDERED** at Jacksonville, Florida, this 17th day of

June, 2025.

**MARCIA MORALES HOWARD**
United States District Judge


JaxP-12
c:      Wayne Lamar McKinnies, #158143
        Counsel of record

37